1604 Witex vs. the United States 1605 Witex vs. the United States 1605 Witex vs. the United States 1608 Witex vs. the United States 1609 Witex vs. the United States May it please the court, my name is Curtis Knauss and I represent the appellants in this action, Witex and Mannington Mills. This case presents a single issue for the court. Is the subject merchandise correctly characterized as tileboard under the tariff? Detailed examination of the tariff terms and the common meaning applied to general rules of interpretation in this circuit precedent shows that the subject merchandise is correctly classified under 4411 1930 of the HDSUS. Well, it seems to me one of the problems I have with your argument is we're talking about floor tiles, right? They're multi-use. That are not suitable for walls or ceilings. These are actually, and there's testimony on the record that showed, a brochure that showed this is a multi-use product. It has been called flooring tiles, but it is used on vertical surfaces as well as horizontal surfaces. On walls and ceilings? Yes, not ceilings that I know of, but certainly on walls. Absolutely. Wet walls? Yes, wet walls. It's the same installation process and the same use process, although it is tougher because it has an additional ingredient that what the government claims is representative tileboard. It's the same basic material installed the same way. We would submit that our product is even more water resistant than anything the government has supplied to the trial court as being tileboard. As I was mentioning, classification under 4411 1930 requires the following four elements. It must be high-density fiberboard. It must be continuously worked along any of its edges. It must be dedicated for use in the construction of walls, ceilings, or other parts of buildings. And fourth, it must be tileboard. The trial court, as you know, and the parties agree to the first three elements. The question remains, however, what was the meaning of tileboard? The parties agree that 4411 1930 is an AO nominee provision, which, as we all know, includes all forms of that article. However, the term tileboard is not defined by the tariff itself. It's not defined in the explanatory notes nor the legislative history. Precedent in this circuit requires utilizing the common meaning of the term unless there is a different commercial meaning. As this court held in timber products, one who argues that a tariff term should not be given its common meaning must prove that there is a different commercial meaning in existence which is definite, uniform, and general throughout the trade. There was no evidence that a commercial meaning existed in this case. Therefore, the trial court had to employ the common meaning. But it didn't do so here and it committed reversible error for that. Common meaning, the appellant submit, is found in the five definitions that the court had provided, which had the following main elements. With a thin piece of a material used for interior finishes. With a durable, glossy finish. Simulated in natural building material, usually tile. Now the subject merchandise fits this definition and satisfies the other requirements of 4411 1930. However, the trial court's impermissibly strayed from the common meaning and developed its own commercial meaning based on the testimony of a single, unqualified witness. Mr. Goretto had no evidence to support his characterization of tileboard. It was contemporaneous with the term's adoption by the tariff. Why was he unqualified? He had a considerable amount of experience, didn't he? He had a considerable amount of experience as an import specialist. But he had no experience in the trade, so to speak. He was not, at the time the term was adopted, he didn't have any experience actually dealing, selling, buying, trading the materials at issue. And another fact that shows his lack of experience, he wasn't even familiar with the term tileboard, which is used for a different product, which is a cement board, that shows up on the party's uncontested facts. So there was another term, I'm sorry, there was another product that was different from the product that he claimed was tileboard, also named tileboard, yet he was unfamiliar with it. Again, there was no uniform, definite definition of tileboard at the time the term was adopted. He referred to a panoply, as I mentioned, of articles in the building trade. And our uncontested facts show, number eight, the term tileboard is sometimes used to refer to a concrete board, I'm sorry, concrete-based sheet material that is used as a backer board for the installation of ceramic tiles. And when pressed at trial, Mr. Goretto could not describe the term tileboard with any degree of particularity. He confirmed that, in fact, even though he denied it at first, that product couldn't be laminated, or the laminated product which Wetex produces and Mannington imports is a laminated product. He said that tileboard could never be a laminated product. Yet, when pressed on page 105 of his testimony, he says, indeed, that, and I quote his language here. Where's that in the appendix, Mr. Canale? Yes, that's page 187, our joint appendix. It's a top-right section. It's page 105 of his testimony. And I asked him, if it is a sheet, it would be laminated, yes? And he answered, so if then that was laminated, it could be classified as tileboard, is that correct? I'm sorry, that was my language. And he answered, it could be classified or, and then I asked, it could not be, correct? He said, no, that's not correct. Okay, so tileboard can be laminated. And he responded, no, it could have a backing which could be laminated. So, indeed, we have testimony from the government's witness that a tileboard, what he considered tileboard, could be a laminated product. But in any event, as this court has held in Lenron and Tropical Craft, the scope of the common meaning cannot be limited by this kind of testimonial evidence. Short of finding a commercial meaning, the common meaning must be employed. Now, I'm a little confused with this terminology. When you talk about common meaning, you're really talking about a common commercial meaning, aren't you? No, Your Honor. I'm talking about common meaning as it's accepted in common parlance. Common meaning is as it says it is. It's common. Everyone knows about it. Whether you're in the trade or not, it's common. I understand there's something called commercial designation, which is a very different kind of thing where everybody has agreed on a particular designation for a product. Appellants admit that commercial meaning is the same as commercial designation. You want to use those terms interchangeably? I think everybody has, yes. Okay. So that common meaning refers to common in what sense? Common in everyday knowledge, layman's terms. That would be the common meaning. And those are the common meanings found as we submit in the five definitions that were before the trial court. And those were found in regular dictionaries as well as scientific dictionaries. Okay. And when it comes down to the court based its decision on trying to make two distinctions between the subject merchandise and what the court considered tileboard. And the first distinction was that the product tileboard had to have a wet finish. And yet, again, I refer to the party's uncontested facts at paragraph six. The imported articles are made with a substrate of fiberboard, density exceeding 20 grams per cubic centimeter, laminated with three or more layers of paper, impregnated with a thermosetting resin known as melamine, and a top layer of liquid melamine coating. Now that is a wet finish. Now the process of applying that to the substrate fiberboard is different than what the government contends is tileboard. Yet there's no basis to distinguish the subject merchandise based on a process. It's the characteristics that are important. And it's these characteristics that include the subject merchandise in subheading 4411 in 1930. The second distinction that the court made was the tileboard, the laminated finish, would be unacceptable. And as I just mentioned, the government's own witness and the testimony that the court used to make this distinction in fact stated that what he considered tileboard could have a laminated backing, which is the same. The trial court's conclusion is clearly erroneous and contrary to law and must be reversed for these reasons. Thank you, Mr. Knauss. You'll have your rebuttal. So we'll hear from Ms. Rubin. How have you been, Ms. Rubin? I've been okay. And yourself? Okay, thank you. May continue to please the court. I'm just floored that Mr. Knauss would, yeah, floored, pun intended, I guess. I hadn't thought about it. You're not tired by it. For him to introduce evidence right now in this argument that was not before the court, for him to make statements that should have been the subject of testimony, there is no place where the merchandise here is described as a multi-use product except three lines in the transcript by their own witness who could only come up with one instance where this product was used on walls, and it's in the Mannington Mills cafeteria. They use their own product on their walls. That's not a high-moisture area as far as I know. But Mr. Knauss stood here and told you that there's uncontroverted evidence that this is a multi-use product that's frequently used on walls and in all sorts of places. He also added it was okay for wet environments. Okay, except the problem is their warranty on this merchandise says don't use anything other than a damp mop to clean it with, and only some of their products are warrantied against moisture. There's also only one brochure that they might be able to point to that indicates anything about using this merchandise on walls, and there was no testimony that the merchandise showed in this brochure was actually the merchandise at issue, especially because the collection that this brochure depicts was introduced after the entry is an issue. So about the first five minutes of what Mr. Knauss said and all the factual statements he made should be discounted. You're saying none of that's in the record? None of that is in the record, and feel free to ask Mr. Knauss to establish it from the appendix, which should be the record at trial. This is a very similar product to at least the Mannington product is very similar to what was at issue in Faust, the predecessor case or previous case, but at least Faust has admitted that this stuff is flooring. It really is. And so the gravamen of it being flooring is that it doesn't fit under tileboard because they talk about constructions, walls, ceilings, and other parts of buildings. The gravamen is that tileboard and flooring are very distinct products. They're distinct commercially. They're distinct in how they're manufactured. They're distinct in a whole host of ways, and the curious thing about this trial was that the appellants presented not a shred of testimony or other evidence regarding the decisive issue of what is tileboard in any way that would help them, but the other curious fact is they actually presented two witnesses who described as tileboard, because they knew it from personal experience, exactly the product that we would agree is tileboard, and I have here some samples that were sent down from the CIT, and these smaller samples, well, the square sample and this smaller sample, are what customers would consider to be tileboard. They're small samples. A tileboard would come in either a four-by-eight sheet or a five-by-five sheet in order to fit nicely and evenly on either a shower stall or behind a bathtub, and that was testified to by Paul Goretto. The point of information, the average bathtub is five feet long, so two sheets of tileboard would fit nicely around the bathtub surround. But rather than rely on any evidence that it presented at trial, any actual evidence as opposed to the statements of counsel here, WETEX repeatedly insists on, and I'm using WETEX to, appellants, I'll just say appellants, they insist on fabricating a definition, partly on the five dictionary definitions found by Judge Pogue and partly on wishful thinking. In fact, in its reply brief, the appellants actually read the word tileboard right out of that provision by asserting that, quote, in this case, Congress has limited tileboard in subheading 4411-1930 to products that are fiberboard of certain density that were surface covered, that have their edges continuously worked, and that are dedicated for use in the construction of buildings. That may describe tileboard, but you know what else it describes? It describes everything else in 4411-19, and the parties don't dispute that that's where this merchandise belongs. I'm a little worked up, I'm sorry. With respect to appellants' criticism of National Imports Specialist Paul Goretto as not knowing anything, the man has over 35 years of experience dealing specifically with wood products. The fact that he wasn't aware of a non-wood product that might go under the name tileboard is of absolutely no relevance. In fact, there was no testimony of that. We agreed that that was sort of a fugitive use of the term tileboard. We put that right in the pretrial order. He wasn't asked about it. The fact that he didn't know about a non-wood product that may be called tileboard is totally irrelevant. But he did have lots of experience, not only with tileboard, but with every variety of wood product that comes through the borders of this country, because he is Mr. Wood for all intents and purposes. He is the National Import Specialist. He has been for many, many years. He was the National Import Specialist for wood products under the predecessor statute, and he's currently the National Import Specialist in that capacity. He described in a trial what he does. He does a lot of research. He visits companies. He talks to professionals. He goes to trade shows. He does all sorts of stuff to keep himself apprised of what's in the market. He was involved when the tileboard provision was adopted into the HTSUS. To say that it's just one man's opinion based on nothing is just ridiculous. The fact that he had no experience buying, selling, or trading these products, I think that's what Mr. Knauss said, is not a reason to discount his testimony, even if he had ever been asked whether he's ever bought, sold, or traded tileboard. I don't know whether he has or not. Lots of people use it in their bathrooms. Both appellant's witnesses did. As far as the definition that you should apply for tileboard here, commercial meaning and commercial designation, as Judge Plager indicated, is not the same thing. There are countless cases in customs law that indicate that the presumption is that the commercial meaning and the common meaning are exactly the same. If one of the parties attempts to provide different meaning that's unique to a specific trade, that wouldn't be how the term is used in common parlance. That's a commercial designation. That's a mistake that appellants make throughout their briefs. Mr. Knauss said everybody uses commercial meaning and common meaning interchangeably. That is absolutely not true in customs law. Commercial designation is one thing. Commercial meaning is the same as common meaning unless a commercial designation is proven. Commercial designation is a commercial meaning, but it is not the commercial meaning when common meaning is the same, if that makes sense. They're presumed to be the same, and in this case they are the same. It makes sense if you're trying to make the distinction that common meaning means common within the commercial environment. That's exactly correct. The tariff statute is written in terms of commerce. We're not saying here that there are different industries that would use the term tileboard differently, and here the court should only look to a specific industry where it's unique to that industry. Here the term tileboard is a known commercial product, and you don't have to be in the tileboard industry to know what that product is. You can go into Lowe's or Home Depot and go and find out where the big sign that says tileboard is, and you know what you'd find? This. I'm sorry. For the record, the samples that I've got in my hand, which is a small gray sample and a flowered sample with four squares, and the flooring products would be in a different section. I take it they were both in evidence at the trial. All three of these were in evidence. This is Plaintiff's Exhibit 28, which the court deemed to be, and I asked Mr. Knauss before the argument, I think this is not a full-size sample. Is this his product? This is Mannington's product. Wetex never demonstrated what their product was in this case, but Mannington put on a witness that was able to identify this product, and we don't have any problem stating that this would be the type of product based on the testimonial evidence of Mr. Bradway. But Mr. Goretto, who knows a lot about tileboard and a lot about wood products, testified that these, which is Defendant Sample S and Defendant Sample T, Exhibit S and T, are exactly what customers would consider to be tileboard classifiable as tileboard. And the difference, I take it, is the hard finish? Although he has a hard finish. No, no, no. The difference is, number one, the finish. This is the coating. This is the lamination. This was put on as, let me say this. I should be clearer for the record. The coating on the tileboard is put on as a wet finish, and then it's baked hard. The covering on the product in issue is put on as a pre-existing sheet of paper, and then another sheet of melamine, and they're bonded together. And that, by the way, brings me to an error in the pretrial order, which I pointed out in our brief, and which plaintiffs never addressed. In fact, compounded again in their reply brief. We inadvertently agreed to a statement that said there was a liquid coating on the product in issue. There isn't. There never was. It's a pre-existing sheet that's been bonded together, and we have in our brief the testimony by Mr. Bradway, appellant's witness, to indicate that. Tileboard is much thinner than the product in issue. It varies minimally around one-eighth of an inch. It depends presumably if you're doing metric or non-metric. So the coating, the size that these sheets come in, as Mr. Goretto testified, they always come in either four-by-eight sheets or five-by-five sheets. The use, this is just not durable enough to be used as flooring. I could probably break it if I was so inclined, but I'm not. I could not break the product in issue. It's just too durable. It also has an aluminum oxide studded into the melamine overlay, which creates durability. This could be scratched, which is why it's not recommended for countertops or flooring. This is called flooring. Mr. Bradway testified over and over again that he's a flooring guy and that he's never heard of this product referred to as tileboard, except in the context of this case. It's marketed differently. There's different companies that make this stuff. The federal regulations also indicate that flooring and tileboard are distinct products. They're just totally different. You may be having a little bit of concern, although it's addressed in our brief, about the other parts of buildings language that's in the tileboard provision. As we explained in our brief, that came right from the TSUS. It was never intended to expand the tileboard provision beyond what is actually known in common parlance as well as in the commercial world as tileboard. The other parts of building language doesn't necessarily encompass all other parts of building. There are examples of tileboard, actual tileboard, being used in other parts of buildings. We include in the appendix a couple of really bad photocopies. I apologize for the quality of the... What page did these have in this room? Page 424. There's just a few pages where you can see the product being used on the front of a bathtub as opposed to on the wall behind the bathtub or on the front of a counter. There are other places where this product could be used. The other parts of buildings was not intended to expand tileboard beyond tileboard. You should consider that this product just isn't tileboard as it's known commercially, as it's known commonly, as it's known within Mannington and Wetex's own circle of flooring people. Do you have any questions? Thank you very much. Thank you, Ms. Rubin. Mr. Knauss, you have your remaining time. Thank you. It's about 4 minutes and 20 seconds. Okay. Thank you, Your Honor. Your Honor, for all the government's attempts to limit the terms of this non-meaning provision, tileboard, subject merchandise fits squarely within the scope of the common meaning. There is no material distinction between the products the government has just showed you and showed the trial court. The trial court, however, deviated from using the common meaning by developing its own commercial meaning. As this court has held, that is impermissible and rises to the level of reversible error. And for these reasons, the appellants believe that this case should be reversed and motion for our summary judgment should be granted in appellant's favor. Thank you. Thank you, Mr. Knauss. Thank you again. The case is submitted. That concludes this morning's hearings.